UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-80627-CIV-MIDDLEBROOKS/LYNCH

PAMELA ANDROMIDAS,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration,

    Defendant.
_____/



FILED by _____ D.C.

JUN 19 2008

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

## REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 17)

**THIS CAUSE** comes before this Court upon an Order of Reference for a Report and Recommendation on the instant case. Having reviewed the pleadings[1] and the administrative record, and having held a hearing thereon on June 17, 2008, this Court recommends as follows:

### BACKGROUND

1. The Plaintiff applied for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act in January 2006. Her applications were denied

---

[1] The Plaintiff did not comply with this Court's Order (DE 15) instructing her to submit Proposed Findings of Fact and Conclusions of Law (in lieu of a motion for summary judgment) with a copy saved to a diskette. The Plaintiff moreover failed to file her notice regarding consent to magistrate jurisdiction, as that Order also had instructed.

Page 1 of 17

initially and after reconsideration, and in December 2006, following a hearing, an Administrative Law Judge ("ALJ") rendered a decision finding the Plaintiff not disabled under the terms of the Act. The Appeals Council denied her Request for Review on May 23, 2007, thereby leaving the Commissioner's decision final and subject to judicial review.

2.   On August 3, 2005 a dog knocked into the Plaintiff's right knee, causing her to fall down. The Plaintiff claims disability as of that date due to various residuals of that incident. The Plaintiff claims bilateral knee pain and herniated discs in her cervical and lumbar spine. These cause constant severe pain, but because she is allergic to pain medication, she must pursue alternative pain management on a daily basis. The conditions limit her mobility and cause her legs to give out. Since the onset of these conditions, the Plaintiff also has developed a variety of other conditions such as shoulder pain, left hip pain, a claw hand, migraines, occasional vision loss, and ringing ears. She must use a cane to ambulate.

3.   At the time of the hearing, held November 2006, the Plaintiff was 34 years old, and she has nearly two years of college education. Over the years she has worked as a food marketer, a diet center clerk, restaurant hostess, waitress, day care attendant, and model. Shortly before her injury, she had quit her restaurant job and had just started an arts and crafts

business. She did not continue with the business after the injury, and she has not worked since.

4. There are no medical records contemporaneous with the injury event. The medical record instead begins several months later in October 2005 when the Plaintiff began seeing a chiropractor, Dr. Ramirez, for physical therapy. The Plaintiff complained of low back pain, right knee pain, and later shoulder and upper back pain. The Plaintiff received regular care there through January 2006. The Plaintiff complained of varying neck, low back, and knee pain, and the physical examinations yielded relatively mild findings. An MRI of the Plaintiff's right knee taken in November 2005 showed some ligament tears.

5. The Plaintiff saw two orthopedists in early 2006. First, in February, the Plaintiff saw physician assistant Mr. Carril of the Florida Center for Orthopaedics. She described very severe pain which greatly impaired her daily life activities and left her mostly bedridden. In contrast to her extreme subjective complaints, the physical examination was mostly normal except for some signs of back and knee tenderness and some decreased range of motion. Mr. Carril recommended additional MRI's. An MRI of the Plaintiff's left knee was fully normal. A cervical MRI showed minimal to mild bulging discs at C4-5 and C5-6 with some other minimal degenerative changes, and a lumbar MRI showed a mild bulging disc at L4-5 with some other minimal degenerative

changes. In March Mr. Carril advised the Plaintiff to avoid excessive walking. The Plaintiff cancelled her follow-up appointment with Mr. Carril, and did not return.

6. In April the Plaintiff began seeing another orthopedist, Dr. Hermida. He noted many of the same subjective complaints and physical examination findings as Mr. Carril, and at the follow-up visit in May, Dr. Hermida stated that he could provide no further care or treatment to her. Later in May the Plaintiff returned with complaints of right knee pain. The doctor reviewed the MRI and interpreted it as showing a possible partial ligament tear. The tear caused no instability, but it appears that the doctor did believe it was the cause of some permanent pain. The Plaintiff asked for sleep aid medication because of right knee pain, which was prescribed.

7. In June 2006, a non-examining DDS medical advisor rated the Plaintiff's residual functional capacity ("RFC"), finding her able to perform light work and perform frequent postural activities. An RFC assessment had been prepared earlier, in March 2006, but it is unclear whether that advisor was a medical professional. In that prior assessment, the Plaintiff was rated as able to perform light work subject to only occasional postural activities.

8. In April 2006 the Plaintiff went to the hospital with complaints of abdominal pain, and she was diagnosed with a

hernia. No other symptomatology was noted. In August 2006 the Plaintiff went to the hospital with a right knee contusion without injury or trauma.

9. The Plaintiff began seeing a third orthopedist, Dr. Golden, in September 2006. In contrast to prior subjective complaints, the Plaintiff referenced mostly left knee pain, with relatively less right knee pain, and only intermittent neck pain with mild extremity pain radiation. The physical examination revealed mild pain abnormalities, x-rays showed osseous abnormalities, and the doctor diagnosed bilateral knee synovitis and cervical sprain/strain syndrome. The doctor also mentioned the need for an endoscopy, but it does not appear that one was ever performed.

10. Upon Dr. Golden's referral, the Plaintiff began regular sessions of physical therapy with Mr. Philips, which ended in mid October 2006. The physical therapist's notes show continued pain complaints but also engagement in active physical exercise such as walking and strengthening. It was during this time, in September 2006, when the Plaintiff's date last insured fell. This means that at least for disability insurance benefits purposes, the Plaintiff must prove the onset of disability on or before the end of September 2006.

11. In October and early November 2006, three medical doctors (Drs. Golden, Saltz, and Lopez-Ivern), one physician's

assistant (Mr. Carril), one physical therapist (Mr. Stinson), and one unknown author all filled out and submitted the same brief Disability Statement questionnaire form. Drs. Golden and Saltz and Mr. Stinson found no disability or impairment, with Dr. Golden withholding his opinion until the conclusion of physical therapy. Mr. Carril indicated that the Plaintiff had been on light duty status for one month in early 2006, but since then, she had been returned to full duty work. The unknown source likewise said the Plaintiff was not disabled, but that source did impose an impairment rating albeit at only 6%. Only the last doctor, Dr. Lopez-Ivern, said the Plaintiff was disabled. He based his opinion on post-traumatic stress disorder, fibromyalgia, and related symptoms of fatigue, falls, and stress. These forms were filled out shortly before the November 11th, 2006 hearing.

    12.  In June 2006 the Commissioner sent the Plaintiff for a consultative psychological evaluation. Dr. Rottblatt, a psychology fellow under the supervision of Dr. Segel, observed some pain behaviors albeit without involuntary movements and without pain severe enough to interfere with testing. The Plaintiff reported significant daily life activity impairments, and stated that a bout of humidity had caused her joints to swell, leaving her bedridden for a week. The Plaintiff reported receiving psychological care (although the administrative record

contains no such treatment records). The doctor diagnosed eating disorder, moderate major depressive disorder, and post-traumatic stress disorder. The doctor opined further that the Plaintiff's pain, depression, and anxiety reduced her capacity for sustained employment. Later the doctor filled out an RFC questionnaire, stating that the Plaintiff's conditions pose moderate impairments with respect to instruction comprehension and tolerance of work pressure. A non-examining medical advisor rated the Plaintiff as having non-severe affective, anxiety, and substance abuse disorders that posed only mild functional impairments.

13. The Plaintiff testified at the hearing, stating that she suffers from a wide variety of severe ailments all stemming from the dog injury. These conditions cause her legs to give out, leaving her prone to falling and necessitating use of a cane, and pain and numbness radiate out into her extremities. She stated that recently a rheumatologist diagnosed arthritis and that he suspected fibromyalgia or multiple sclerosis. Lastly she stated that she has been seeing a therapist, attending group counseling, and was recently referred to a psychiatrist. With respect to daily life activities, she stated that most of her day is spent going to doctors' appointments and pursuing pain management in lieu of pain medication. Housework is limited to personal laundry, she walks only to get the mail from the end of the driveway, and cooking is limited to microwave use. She attends

church, but otherwise she rarely goes out. She shops only for necessities.

14. She described a very limited range of functional ability. She can sit only for five minutes, stand for 15 minutes, walk one block, climb no stairs, and lift only up to 8 lbs. She cannot engage in postural activities such as bending, crouching, or kneeling; she cannot push/pull or reach out; and she has terrible balance. Both her concentration and memory are impaired.

15. The ALJ found the Plaintiff to suffer from the severe impairments of discogenic and degenerative back disorders, other unspecified arthropathy (joint disease), and major depression. The ALJ next reviewed the medical record. With respect to her physical conditions, the ALJ noted the overall conservative treatment, the relatively mild physical examination findings, and the lack of any substantial doctor-imposed restrictions. The treating physician assistant, Mr. Carril, did say the Plaintiff was restricted to light duty work, but that was for only one month's time in early 2006. The only doctor to say that the Plaintiff was wholly disabled was Dr. Lopez-Ivern, but the ALJ discounted his statement as unsubstantiated by the medical record. The ALJ also discounted the Plaintiff's subjective credibility, finding that while her back and knee conditions reasonably may cause some pain, the medical evidence did not suggest the same degree of disabling pain as she alleged.

16. The ALJ also considered evidence of mental impairment. The ALJ discounted Dr. Rottblatt's RFC assessment of two areas of moderate impairment as being inconsistent with her earlier findings of intact attention and concentration. Instead the ALJ found the advisor's ratings of mild impairments most consistent with the record evidence.

17. Taking the foregoing into account, the ALJ assessed an RFC for a full range of light exertional work, tracking the second advisory RFC assessment. The ALJ found that this RFC left her able to return to her past relevant work of hostess, model, waitress, or day care attendant (although the ALJ offered no explanation as to how). The ALJ therefore concluded that the Plaintiff is not disabled.

## **DISCUSSION**

Judicial review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the proper legal standards were applied. See Lewis v. Callahan, 125 F.3d 1436 (11th Cir. 1997). Supporting evidence need not be preponderant to be substantial so long as it amounts to more than a scintilla. In other words, it is such relevant evidence that a reasonable person might accept as sufficient and adequate to support the conclusion reached. See id. at 1440. If the decision is supported by substantial competent evidence from the record as a whole, a court will not disturb that decision.

Neither may a court re-weigh the evidence nor substitute its judgment for that of the ALJ. See Wolfe v. Chater, 86 F.3d 1072 (11th Cir. 1996). See also, Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002). While the Commissioner's factual findings enjoy such deference, a court is free to review the Commissioner's legal analysis and conclusions de novo. See Ingram v. Comm'r, 496 F.3d 1253, 1260 (11th Cir. 2007).

The Plaintiff contends that the RFC assessment lacks supporting evidence. Residual functional capacity measures the most a claimant can do despite her medical limitations. Thus an RFC assessment is derived from evidence of what those medical impairments are and their severity. See Social Security Ruling 96-8p. Here there was very little objective medical evidence suggesting the presence of disabling impairments. The Plaintiff saw a series of orthopedists but none for long. Nevertheless the orthopedists were consistent in their observations of relatively mild manifestations of pain such as some tenderness and some reduced ranges of motion. Otherwise the physical examinations were normal. These observations stand in sharp contrast to her claims of impairment severe enough to leave her bedridden. Indeed she performed activities during physical therapy, such as walking and strengthening activities, which far exceeded what she claimed she could do.

Nor was there treating source opinion supportive of her

claims. No treating physician (or physician's assistant) said the Plaintiff was disabled or even imposed significant work restrictions. Several other medical professionals — of whom it is unclear whether they even examined the Plaintiff — likewise declined to say the Plaintiff was disabled or to impose significant work restrictions. Furthermore the ALJ was correct to discount Dr. Lopez-Ivern's disability statement. It is true that generally speaking, treating source opinion should be accorded considerable weight. See 20 C.F.R. § 404.1527(d)(2). However treating source opinion is not determinative, and an ALJ may discount it for good cause shown, see Lewis, 125 F.3d at 1440, as was shown here. Not only does Dr. Lopez-Ivern provide no explanation to support his opinion, but there is no evidentiary basis to support either his diagnoses of post-traumatic stress disorder (the doctor is presumably a physician, not a psychologist) or fibromyalgia (an inherently subjective condition that can only be diagnosed by exclusion). The present record does not even establish Dr. Lopez-Ivern as a treating source.

At this juncture this Court considers the Plaintiff's argument that the ALJ did not review all of her submitted medical evidence. Attached to her Motion are several cover letters, dated from October 23, 2006 through November 22, 2006, under which the Plaintiff submitted the evidence. However it is clear from the letters' descriptions that the evidence referenced in each

already is contained in the administrative record and subject of the ALJ's discussion. The only exception to this are the treatment notes of Dr. Lopez-Ivern which the administrative record does not contain. This evidence would be relevant if it establishes Dr. Lopez-Ivern as a treating source or substantiates his opinion. Nevertheless this Court does not find its omission fatal to the ALJ's decision. First, although the administrative record does not contain these treatment notes, that does not necessarily mean the ALJ did not have it before him to consider, such as he did with the other evidence submitted in this way. The ALJ stated that the doctor's opinion was "not substantiated by the medical evidence of record" which still could have included the treatment notes. Secondly, the cover letter's description of those treatment notes references diagnoses of "bilateral knee synovitis and Neck Sprain" from treatment provided "through September 2006" (this is the same diagnoses offered by Dr. Golden's practice on September 19, 2006) as well as an MRI showing "narrowing at the lumbar spine with osteophytes." Neither of these conditions, however, was the basis for Dr. Lopez-Ivern's disability opinion. And lastly, the Plaintiff's attorney did not indicate at the hearing that the record was incomplete or advised the ALJ to await any additional evidence. Instead, when the ALJ inquired, "and we do have a complete record now", he answered "yes".

Disability can also be based on pain, but as with treating source opinion, an ALJ may discount subjective pain complaints for good cause shown. See Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (providing a detailed application of the Holt pain standard and pain credibility analysis.) The ALJ did acknowledge the presence of underlying impairments that reasonably could give rise to pain such as back degeneration and knee injury. What the evidence failed to show, however, was pain severity to the extent alleged. The conditions' relatively mild state (minimal knee abnormality and the absence of severe spinal degeneration or herniation), the relatively mild physical examination findings, the very conservative treatment history, and the absence of doctor imposed restrictions are all relevant factors when considering pain severity. See 20 C.F.R. § 404.1529. The focus of the Plaintiff's subjective pain complaints over the course of the medical history, themselves, shifted in their focus. She complained of back pain; at other times and later in the record, she complained more of knee pain; and during the two hospitalizations, she raised no complaints of back or knee pain. In some records the Plaintiff attributed her back pain to a much earlier car accident; to the extent the Plaintiff did injure her back at that time, there is no indication that the injury interfered with her employment then. Consequently the record supports the ALJ's finding of less than disabling pain.

The other facet of the ALJ's decision concerned mental impairment. The Plaintiff mentioned no psychological conditions in her original application, and even at the hearing, identified no specific mental impairments. Nor does the record contain any private psychological care. The main source of evidence of mental impairment instead comes from the consultative evaluation. Several months after that evaluation, the evaluator filled out an RFC questionnaire indicating two particular areas of moderate impairment. The ALJ chose not to base his RFC assessment on it but rather on an advisory RFC rating of mild impairments. The ALJ did not err in lending the advisor's report greater weight. To begin with, Social Security regulations do not accord consultants, whose opinions are informed by only a one time evaluation, the same weight as a treating source. See 20 C.F.R. § 404.1527(d). Secondly the consultant's report lends only minimum support to her assessment. She based the instruction comprehension rating on the Plaintiff's poor memory recall during testing, but all other areas of cognitive functioning were normal. She based the work pressure response rating on the Plaintiff's demonstration of significant anxiety and depression, but the consultant relied heavily on the Plaintiff's subjective complaints, subjective complaints which the ALJ discounted. And no other examining source observed significant anxiety or depression. Lastly the advisor's assessment was based on the same

report and was accompanied by an explanation. The advisor noted how the Plaintiff's post-traumatic stress disorder was unconfirmed; she displayed no "significant over anxiety"; and despite the presence of a depressed mood, socializing was limited more by her physical condition.

Consequently the record provides competent, substantial evidence to support the ALJ's RFC assessment for a full range of light work without any significant mental impairment. Because the advisors' RFC assessments accurately reflect the record evidence — and did not contradict any persuasive evidence indicating greater impairment — the ALJ was correct to base his assessment on the advisors'.

Step Four of the Social Security Analysis requires an assessment of both the Plaintiff's RFC and her ability to return to her past relevant work. See Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (discussing 20 C.F.R. § 404.1520(a)(4) and related regulations). It is on this question of past relevant work that the ALJ's discussion is at its briefest; the ALJ simply concluded that the Plaintiff's RFC permits her return to all of her past jobs. Despite its brevity, the ALJ's finding still enjoys record support. The Plaintiff's descriptions of her hostess and model jobs demonstrate that those jobs did not require exertion beyond the light exertional level. The Plaintiff argues that vocational expert testimony is needed

to make this evaluation, but the regulations make clear that she can be found able to return to past work either as the job is performed generally in the economy or as she, herself, performed it. See 20 C.F.R. § 404.1560(b). The Plaintiff's descriptions of her own past jobs provide competent evidence on the matter. While a vocational expert may be called to give evidence, under these circumstances, vocational expert testimony was not necessary.

## CONCLUSION

It is not for this Court upon judicial review to re-weigh the evidence or reach findings of fact de novo; such is the prerogative of the ALJ as the fact-finder in this case. This Court's review is limited to ensuring that the ALJ's findings of fact are supported by competent, substantial evidence and that the decision comports with the governing law and regulations. Having reviewed the parties' arguments and having independently reviewed the record, this Court finds the decision to enjoy such support, with no grounds warranting reversal or remand. The record supports the ALJ's conclusion that the Plaintiff's conditions are not so impairing as to preclude her return to her past work.

**ACCORDINGLY**, this Court recommends to the District Court that the Plaintiff's Motion for Summary Judgment be **DENIED**, and that summary judgment be **GRANTED** in the Commissioner's favor instead.

The parties shall have ten (10) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Donald M. Middlebrooks, the United States District Judge assigned to this case.

**DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida, this 19th day of June, 2008.

```
                              FRANK J. LYNCH, JR.
                              UNITED STATES MAGISTRATE JUDGE
```

cc: Hon. Donald M. Middlebrooks
    Bernard J. Levy, Esq.
    Stephanie I.R. Fidler, AUSA